128 F.3d 38
 UNITED STATES of America, Appellee,
v.
Robert TORRES, also known as Roberto Torres-Amaro, also
known as Papo, also known as Papo Biombo, also known as Papo
Blue Moon, also known as El Brujo; Ismael Pastrana, also
known as Ismael Pastrana-Delgado, also known as Junior
Pastrana, also known as Junior Grasa; Miguel Millan, also
known as Miguel Millan-Silva, also known as Mickey Millan,
also known as Maneco; Manuel Cruz, also known as Manuel
DeJesus, also known as Manny, also known as Maneco; Juan
Lugo, also known as Juan A. Lugo-Castro, also known as Juan
Angel Lugo, also known as Juan Antonio Lugo Melendez, also
known as Johnny Lugo; Edwin Torres, also known as Compy;
Elvin Reyes, also known as Tuti, also known as Tuty;
Gilberto Laguna, also known as Gilberto Ruben Laguna, also
known as NFN Ruben; Pedro J. Merete, also known as Chucky;
JosE Espada, also known as Jose Espada Martinez, also known
as Chan; Carmelo Rodriguez, also known as Carmelo
Rodriguez-Rosas; Enrique Rodriguez, also known as Enrique
Rodriguez-Narvaez, also known as Quique; Manuel Iglesias;
Carmen Amaro; Miguel Torres, also known as Miguel
Torres-Diaz, also known as Miguel Diaz, also known as Papo
Viejo, also known as Papo Grande, also known as Big Papo;
Gloria Vasquez, also known as Gloria Vasquez Ortiz, also
known as Dona Gloria; Hector Roman and John Chapel, also
known as Juan Alvaro Chapel, Defendants,
Joaquin Rivera and Joseph T. Devery, Defendants-Appellants.
 Nos. 1587, 1632, Dockets 96-1535, 96-1597.
 United States Court of Appeals,
Second Circuit.
 Argued June 3, 1997.
Decided Oct. 9, 1997.
 
 David L. Lewis, Lewis & Fiore, New York City, for Defendant-Appellant Rivera.
 Paul T. Gentile, Gentile & Dickler, New York City (Diarmuid White, Brendan White, of counsel), for Defendant-Appellant Devery.
 Mary Jo White, United States Attorney, Southern District of New York, New York City (Tai H. Park, Craig A. Stewart, of counsel), for Appellee.
 Before: NEWMAN, KEARSE, and CALABRESI, Circuit Judges.
 CALABRESI, Circuit Judge:
 
 
 1
 This case focuses primarily on the boundaries of the trial judge's discretion to excuse prospective jurors for cause. It asks us to consider under what circumstances a trial judge may either presume or infer bias on the part of a venireperson without explicitly asking whether he or she could apply the law impartially.
 
 
 2
 It is well-settled in our circuit that judges must presume bias in certain highly limited situations where a juror discloses a fact that creates such a high risk of partiality that the law requires the judge to excuse the juror for cause. For example, prospective jurors who are related to one of the parties or who have been victims of the alleged crime itself must be excused. They cannot be impaneled even if they state that they could faithfully uphold the law. But the existence of this narrowly circumscribed category does not foreclose the possibility that, in certain other situations, a court may in its discretion infer, from a disclosed fact that creates a risk of partiality, that prospective jurors would be biased and, as a result, excuse them without expressly inquiring into their ability to decide the case impartially.
 
 
 3
 We today hold that such a category of inferable bias exists. Included within this category are cases, like the one before us, where facts disclosed at voir dire indicate that a prospective juror has engaged in an activity closely akin to the conduct charged in the indictment against the defendant. In such circumstances, the trial court may, in its discretion, excuse the juror for cause.
 
 
 4
 Moreover, we hold that the district judge's exercise of her discretion to excuse a prospective juror in this case was proper, and that the appellants' other contentions are meritless. We, therefore, affirm the court's denial of appellants' motion for a new trial.
 
 BACKGROUND
 
 5
 Appellants Joaquin Rivera and Joseph T. Devery were convicted of a conspiracy to launder the proceeds of a heroin trafficking scheme. Rivera, an attorney, assisted a real estate developer in his efforts to launder the drug money. Devery, a branch manager at a Chase Manhattan Bank in the Bronx, opened various bank accounts to facilitate the deposits of large sums of cash. In addition, Devery "structured" the deposits, dividing them into amounts of less than $10,000, in order to avoid having to file the "Currency Transaction Reports" that are required by federal law for cash deposits of greater than $10,000. See 31 U.S.C. §§ 5313(a), 5324 (1983 & 1997 Supp.); 31 C.F.R. §§ 103.22(a)(1), 103.27(a)(4) (1993).
 
 
 6
 Following their convictions, Rivera and Devery filed a motion to set aside the jury verdict. The motion was denied by the United States District Court for the Southern District of New York (Loretta A. Preska, Judge ). In that motion and on appeal, Rivera and Devery contend that they are entitled to a new trial: (1) because the district court improperly granted the prosecution's motions to excuse for cause four prospective jurors;[1] and (2) because the prosecution revealed that one of its cooperating witnesses had committed perjury during the trial.
 
 
 7
 We uphold the denial of the motion for a new trial on the basis of the allegedly newly discovered evidence of perjured testimony. We also readily hold that the district court properly excused for cause three of the four jurors--Nos. 27, 38, and replacement 38[2]--on its finding of actual bias. Our opinion focuses primarily on the dismissal of the remaining juror--No. 7.
 
 
 8
 Juror No. 7 was excused for cause pursuant to a motion by the prosecution, following her admission on voir dire that she herself had at one time engaged in the "structuring" of cash transactions. Some years before, this juror had worked in the payroll department of a cemetery business that employed roughly sixty people. She was in charge of withdrawing cash funds to pay the employees their weekly salary of approximately $400 to $500. At a sidebar with the judge, the juror stated:
 
 
 9
 [D]uring payroll time or something, weekly, the bank--any transaction over $10,000 they wanted some sort of report made. It was something new. But rather than make the report, we were withdrawing funds for 10,000. So instead of--over 10,000. So instead of making two checks out--making one check, we made two to keep it under 10,000 so that we did not have to file a report.
 
 
 10
 The juror represented that this went on for two to three weeks before her business changed procedure and issued salary checks directly to its employees.
 
 
 11
 Following this interchange, the government moved to excuse Juror No. 7 for cause. Appellants' counsel objected. Rivera's counsel stressed that "[s]he hasn't said she can't be fair. She hasn't been confronted with whether or not she violated the law." Devery's counsel echoed this objection: "I don't know if you have asked the full questions, whether or not any of that would affect her in this case, whether or not she would follow the law, whether or not, in being instructed concerning the laws, concerning [Currency Transaction Reports], she would follow it." At the sidebar, Judge Preska stated: "I don't see that she has to admit that she violated the law for it to rise to cause on this. What she may well think is that in following instructions on the law she may be forced to admit to herself that something she did violated the law. Maybe or maybe not. But I just can't imagine she could be fair." Accordingly, and without further questioning, Judge Preska granted the prosecution's motion to excuse the juror.
 
 
 12
 Devery and Rivera claim that the excusal of Juror No. 7 was improper.[3] They contend that the district court could not find actual bias without questioning Juror No. 7 as to whether she could impartially follow instructions on the law concerning structuring. They further assert that her past conduct did not fall within the narrowly circumscribed category of implied bias that justifies automatic excusal regardless of actual bias.
 
 DISCUSSION
 I. The Jurors Excused for Cause
 
 13
 A criminal defendant is guaranteed a trial "by an impartial jury." U.S. Const. amend. VI. "One touchstone of a fair trial is an impartial trier of fact--'a jury capable and willing to decide the case solely on the evidence before it.' " McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984) (citation omitted). But "[i]mpartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." United States v. Wood, 299 U.S. 123, 145-46, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936). It follows that "in each case a broad discretion and duty reside in the court to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality...." Frazier v. United States, 335 U.S. 497, 511, 69 S.Ct. 201, 209, 93 L.Ed. 187 (1948). Accordingly, the presiding trial judge has the authority and responsibility, either sua sponte or upon counsel's motion, to dismiss prospective jurors for cause.
 
 
 14
 The category of challenges for cause is limited.[4] Such challenges "permit rejection of jurors on ... narrowly specified, provable and legally cognizable bas[es] of partiality." Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965). Usually, "jurors are dismissed from the venire 'for cause' precisely because they are unwilling or unable to follow the applicable law." United States v. Thomas, 116 F.3d 606, 616 (2d Cir.1997).[5]
 
 
 15
 Traditionally, challenges for cause have been divided into two categories: (1) those based on actual bias, and (2) those grounded in implied bias. See United States v. Brown, 644 F.2d 101, 107 (2d Cir.1981) (Oakes, J., dissenting) ("This court has long recognized that a distinction must be drawn between 'actual bias' and 'implied bias'...."). Today we explicitly recognize what courts have implicitly assumed to exist--a third category, that of "inferable bias."
 
 
 16
 A. Actual Bias and Jurors Nos. 27, 38, and Replacement 38
 
 
 17
 Actual bias is "bias in fact"--the existence of a state of mind that leads to an inference that the person will not act with entire impartiality. See Wood, 299 U.S. at 133, 57 S.Ct. at 179. A juror is found by the judge to be partial either because the juror admits partiality, see United States v. Haynes, 398 F.2d 980, 984 (2d Cir.1968) (actual bias is "based upon express proof, e.g., by a voir dire admission by the prospective juror of a state of mind prejudicial to a party's interest"), or the judge finds actual partiality based upon the juror's voir dire answers, see Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion) ("Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.").
 
 
 18
 The trial judge has broad discretion in the questioning of potential jurors. See Mu'Min v. Virginia, 500 U.S. 415, 423-24, 111 S.Ct. 1899, 1904-05, 114 L.Ed.2d 493 (1991). There is no particular script that must be followed. But a standard voir dire question asked of prospective jurors is: "If you are selected to sit on this case, will you be able to render a verdict solely on the evidence presented at the trial and in the context of the law as I will give it to you in my instructions, disregarding any other ideas, notions, or beliefs about the law that you may have encountered in reaching your verdict?" Thomas, 116 F.3d at 616-17 n. 10 (internal quotation marks, citation, and emphasis omitted).
 
 
 19
 Our court has held that actual bias cannot be found unless a prospective juror is adequately questioned on voir dire with respect to his or her ability to apply the law impartially. See Haynes, 398 F.2d at 984; see also United States v. Barnes, 604 F.2d 121, 137 (2d Cir.1979) ("[A]t least some questioning [is required] with respect to any material issue that may arise, actually or potentially, in the trial....").
 
 
 20
 But once the proper questions have been asked at voir dire, "[t]he trial court, when impaneling a jury, 'has ... broad discretion in its rulings on challenges therefor.' " Haynes, 398 F.2d at 984 (quoting Dennis v. United States, 339 U.S. 162, 168, 70 S.Ct. 519, 521-22, 94 L.Ed. 734 (1950)). The trial judge has this broad discretion because a finding of actual bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985); see United States v. Ploof, 464 F.2d 116, 118 (2d Cir.1972) ("[T]he judge was in the best position to evaluate the juror's demeanor and to determine, by the juror's answers to the judge's questions, whether he could fairly and impartially hear the case and return a verdict based solely on the evidence presented in court.").[6]
 
 
 21
 Given the special capacity of the trial judge to evaluate actual bias on the part of prospective jurors, that judge's determination in this regard is accorded great deference, since "an appellate court [cannot] easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses." Rosales-Lopez, 451 U.S. at 188, 101 S.Ct. at 1634 (plurality opinion); see also Ploof, 464 F.2d at 118-19 n. 4 ("There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury."); United States v. Garcia, 936 F.2d 648, 653 (2d Cir.1991).
 
 
 22
 In the case before us, Juror No. 27 had engaged in prior structuring activity. Some seven years prior to his selection as a venireperson, he had deposited money into a partnership account for a real estate venture in two amounts of less than $10,000 in order to avoid having to file a Currency Transaction Report. When questioned by the court at voir dire as to whether the instructions on the law of structuring would affect his ability to be fair and impartial in this case, he was unequivocal in stating that he could not be impartial under the circumstances. When asked to explain, he stated: "Because I did it. I did it and you are telling me that I did something illegal, so I feel like you are accusing me of a criminal act."
 
 
 23
 Similarly, Jurors Nos. 38 and replacement 38 stated in substance that, because of personal experiences with drug dealers, they would not believe a drug dealer's testimony. Juror No. 38's second cousin was murdered by a drug dealer. When asked whether this fact would affect his ability to be fair and impartial, he said: "I would have in-bred doubt in my mind about that person to begin with, just because of my experiences in the past with such individuals.... I don't think I could remain unbiased towards that person's testimony." Replacement Juror No. 38 had a friend who was killed two years earlier by a drug addict. He stated: "If [drug dealers] were witnesses or something like that, I think they're the worst people on earth and I wouldn't believe them no matter what they said." When specifically asked whether he could make a fair judgment as to the credibility of such a witness, he responded: "I don't think I would be able to do that. I don't think they have any credibility."
 
 
 24
 We find that the trial court properly questioned Jurors Nos. 27, 38, and replacement 38 with respect to their ability to be impartial and did not abuse its discretion in concluding that their responses to its questions evidenced actual bias.
 
 B. Implied (Presumed) Bias
 
 25
 Implied or presumed bias is "bias conclusively presumed as a matter of law." Wood, 299 U.S. at 133, 57 S.Ct. at 179.[7] It is attributed to a prospective juror regardless of actual partiality. In contrast to the inquiry for actual bias, which focuses on whether the record at voir dire supports a finding that the juror was in fact partial, the issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced. See Haynes, 398 F.2d at 984. And in determining whether a prospective juror is impliedly biased, "his statements upon voir dire [about his ability to be impartial] are totally irrelevant." Id.
 
 
 26
 For this reason, a finding of implied bias does not rely on any questioning by the trial judge as to the prospective juror's assessment of his or her partiality. Accordingly, in the limited cases in which bias is properly presumed, the judge does not have to ask the juror if he or she could faithfully apply the law.
 
 
 27
 Moreover, disqualification on the basis of implied bias is mandatory. Such automatically presumed bias deals mainly with jurors who are related to the parties or who were victims of the alleged crime itself. The federal courts' adoption of the conclusive implied bias rule has historical common law roots. Thus,
 
 
 28
 Blackstone states that exclusion of a prospective juror for implied bias is appropriate when it is shown: "that [he] is of kind to either party within the ninth degree; that he has been arbitrator on either side; that he has an interest in the cause; that there is an action pending between him and the party; that he has taken money for his verdict; that he has formerly been a juror in the same cause; that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him."
 
 
 29
 Smith v. Phillips, 455 U.S. 209, 232, 102 S.Ct. 940, 954, 71 L.Ed.2d 78 (1982) (Marshall, J., dissenting) (quoting 3 William Blackstone, Commentaries *480-81).
 
 
 30
 We, like most of the circuits,[8] have repeatedly recognized the category of implied bias. See Haynes, 398 F.2d at 984-85. And we have held that if a prospective juror falls within this category, that juror must be excused. See id.
 
 
 31
 In presuming bias, the law has employed an "average man" test:
 
 
 32
 Every procedure which would offer a possible temptation to the average man ... to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.
 
 
 33
 Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927). This test, in a sense, derives from the statement of Chief Justice Marshall, that, even though a person " 'may declare that he feels no prejudice in the case[,] ... the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice.' " Haynes, 398 F.2d at 984 (citing United States v. Burr, 25 F. Cas. 49, 50 (C.C.Va.1807) (No. 14,692g)).
 
 
 34
 In the case before us, Judge Preska found that, "even if actual bias was not expressly elicited, ... [Juror No. 7 was] impaired by implied bias."
 
 
 35
 Appellants contend, however, that the doctrine of implied bias is reserved for "exceptional situations" in which objective circumstances cast concrete doubt on the impartiality of a juror. See Smith, 455 U.S. at 222, 102 S.Ct. at 948 (O'Connor, J., concurring) ("While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias.").[9] We agree.
 
 
 36
 Our court has consistently refused " 'to create a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case, where ... there is no showing of actual bias or prejudice.' " Brown, 644 F.2d at 104-05 (quoting Mikus v. United States, 433 F.2d 719, 724 (2d Cir.1970)). More specifically, we have held that, in cases where members of the venire are challenged on the basis of prior jury service at a trial involving similar but unrelated offenses, at which some of the same government witnesses testified, actual bias must be proved, and may not be conclusively presumed. See Garcia, 936 F.2d at 652; Haynes, 398 F.2d at 984-85.[10]
 
 C. Inferable Bias and Juror No. 7
 
 37
 The excusal of Juror No. 7, thus, cannot be justified either by a finding of actual bias or by implied bias. Juror No. 7 was never asked during voir dire whether, notwithstanding her prior experience of structuring a cash transaction, she could faithfully follow the judge's instructions and impartially apply the law. And, as discussed above, such an inquiry must be made before the judge can find actual bias. Moreover, the case of Juror No. 7 does not fall into the narrow category of presumed bias, which is reserved for "exceptional situations." Just as we have refused to carve out an overly broad category of presumed bias based on occupational or status relationships, so we also decline to hold as a general matter that, where a juror has engaged in conduct similar to that of the defendant at trial, the trial judge must presume bias.[11] Such cases are unlikely to present the "extreme situations" that call for mandatory removal. The exclusion of Juror No. 7 was, therefore, not compulsory.
 
 
 38
 But while the situations in which a trial judge must find implied bias are strictly limited and must be truly "exceptional," it does not follow that the trial judge is without discretion to infer bias outside of this narrow category of cases. On the contrary, there exist a few circumstances that involve no showing of actual bias, and that fall outside of the implied bias category, where a court may, nevertheless, properly decide to excuse a juror. We call this third category "inferable bias."
 
 
 39
 Suggestions of such a discretion on the part of the trial judge to infer bias can be found in prior cases. In Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), for example, the Supreme Court rejected a claim that a juror's employment with the federal government was a sufficient ground for mandatory excusal on the ground of implied bias. Justice Reed, while concurring in the opinion of the Court, wrote separately that he read "the Court's decision to mean that Government employees may be barred for implied bias when circumstances are properly brought to the court's attention which convince the court that Government employees would not be suitable jurors in a particular case." Id. at 172-73, 70 S.Ct. at 524 (Reed, J., concurring) (emphasis added). Likewise, in United States v. Colombo, 869 F.2d 149 (2d Cir.1989), our court, in dicta, rejected as overbroad the government's contention that a juror could never be challenged on the basis of his relationship to a prosecutor. We indicated instead, that, although not rising to a per se implied bias category, relatives of the prosecutor might, in a particular case, be excludable. See id. at 152.
 
 
 40
 Bias may be inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias. There is no actual bias because there is no finding of partiality based upon either the juror's own admission or the judge's evaluation of the juror's demeanor and credibility following voir dire questioning as to bias. And there is no implied bias because the disclosed fact does not establish the kind of relationship between the juror and the parties or issues in the case that mandates the juror's excusal for cause.
 
 
 41
 Nonetheless, inferable bias is closely linked to both of these traditional categories. Just as the trial court's finding of actual bias must derive from voir dire questioning, so the court is allowed to dismiss a juror on the ground of inferable bias only after having received responses from the juror that permit an inference that the juror in question would not be able to decide the matter objectively. In other words, the judge's determination must be grounded in facts developed at voir dire. And this is so even though the juror need not be asked the specific question of whether he or she could decide the case impartially. Moreover, once facts are elicited that permit a finding of inferable bias, then, just as in the situation of implied bias, the juror's statements as to his or her ability to be impartial become irrelevant.[12]
 
 
 42
 We do not need to consider the precise scope of a trial judge's discretion to infer bias. It is enough for the present to note that cases in which a juror has engaged in activities that closely approximate those of the defendant on trial are particularly apt. The exercise of the trial judge's discretion to grant challenges for cause on the basis of inferred bias is especially appropriate in such situations. "Because [in such cases] the bias of a juror will rarely be admitted by the juror himself, 'partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it,' [partiality] necessarily must be inferred from surrounding facts and circumstances." McDonough Power Equip., 464 U.S. at 558, 104 S.Ct. at 851 (Brennan, J., concurring) (citation omitted).
 
 
 43
 In the case at hand, bias was inferred only from particular facts disclosed during the voir dire examination of the prospective juror. Much of the government's evidence against Devery concerned his structuring of cash deposits. As a result of facts developed during voir dire, the district court found that Juror No. 7 had at one time been "involved in activity like that charged in the Indictment," and that her bias "was evident in the acts to which [she] admitted, ... which too closely resembled acts at the core of this trial." Under the circumstances, the court further elaborated that "the mental gymnastics required for her to separate her own experience with [Currency Transaction Reports] from the extensive testimony about CTRs brought out at trial would have been too precarious and too strenuous to have been expected of any juror."[13]
 
 
 44
 Given the similarity of Juror No. 7's structuring activity to the conduct alleged against appellant Devery in this case, it was reasonable for Judge Preska to conclude that the average person in Juror No. 7's position might have felt personally threatened. The judge focused on an objective evaluation of the juror's past experience and its relation to the case being tried. Cf. Gonzales v. Thomas, 99 F.3d 978, 989 (10th Cir.1996) ("The crux of the implied bias analysis in a case like this one is found in an examination of the similarities between the juror's experiences and the incident giving rise to the trial."). The juror would have had to sit through weeks of testimony and other evidence relating to suspicious structuring activity that was--in at least one respect--similar to her own previous conduct. As Judge Preska summarized: "[A]fter [she] w[as] instructed on the law, th[is] juror[ ] may have felt that, in weighing on the defendant's guilt or innocence, [she] w[as] confronting the legality of [her] own past acts as well."
 
 
 45
 We do not today hold that, even in such circumstances, the district court would have erred had it kept Juror No. 7 on the jury. But we do hold that the court acted within its discretion in excusing her from the jury. Cf. United States v. Barone, 114 F.3d 1284, 1307 (1st Cir.1997). In other words, after a careful review of the record, we conclude that Judge Preska acted within her discretion in finding that "the inquiries made of [Juror No. 7] revealed a sufficient factual basis" to allow the court to draw the inference--especially given the hypertechnical nature of the offense of structuring--that the juror would be unable to divorce her consideration of this case from her own structuring experience.
 
 
 46
 II. The Perjured Testimony of a Prosecution Witness
 
 
 47
 On March 12, 1996, while appellants' motions for a new trial were pending, the government notified the court and the appellants that one of its witnesses had committed perjury at trial. The government learned that this witness had withheld from the government about $80,000 in cash proceeds from his heroin business, in direct contradiction to his trial testimony that he had not hidden any money. At that point, Rivera and Devery supplemented their previously-made motions for a new trial with the claim that perjured testimony from this key government witness justified the granting of a new trial.[14]
 
 
 48
 A motion for a new trial based on newly discovered evidence may be granted if it is "required in the interest of justice." Fed.R.Crim.P. 33. Such motions are granted only in "extraordinary circumstances," United States v. Moore, 54 F.3d 92, 99 (2d Cir.1995), and are committed to the trial court's discretion, see McDonough Power Equip., 464 U.S. at 556, 104 S.Ct. at 850; United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir.1992). As a result, we will not overturn a trial court's decision on a new trial motion absent a showing of abuse of discretion. See Moore, 54 F.3d at 99; United States v. Parker, 903 F.2d 91, 103 (2d Cir.1990).
 
 
 49
 When a motion for a new trial rests on newly discovered evidence, the defendants must show: (1) that, with due diligence, they could not have discovered the evidence during trial, see Moore, 54 F.3d at 99; United States v. Siddiqi, 959 F.2d 1167, 1173 (2d Cir.1992); (2) that the evidence is material, see Moore, 54 F.3d at 99; United States v. Wallach, 935 F.2d 445, 456 (2d Cir.1991); and (3) that the evidence is noncumulative, see Moore, 54 F.3d at 99; United States v. Petrillo, 821 F.2d 85, 90 (2d Cir.1987).
 
 
 50
 Where the newly discovered evidence is the existence of allegedly perjured testimony, the defendant must first demonstrate that perjury was in fact committed. See United States v. White, 972 F.2d 16, 20 (2d Cir.1992). And if the prosecution was unaware of the perjury, the defendant must also show "that the jury probably would have acquitted in the absence of the false testimony." Moore, 54 F.3d at 99 (internal quotation marks and citation omitted). If instead the prosecution knew or should have known about the perjury, then the conviction will be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Wallach, 935 F.2d at 456 (internal quotation marks and citation omitted). Thus, "[w]hether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury." Id.
 
 
 51
 In the case before us, the district court refused to hold a hearing on whether the government should have known that the witness proffered false testimony. It instead assumed, for the purpose of deciding the motion, that the government should have known. Nevertheless, the court found that a new trial was not justified because Devery and Rivera could not show that there was a reasonable likelihood that the witness' false testimony could have affected the jury's decision to convict.
 
 
 52
 The court's determination was "pointedly supported by the circumstances of the perjury itself"--namely that the witness' own testimony rendered the significance of his perjury minimal.[15] During Rivera's counsel's re-cross-examination, the witness testified that he did not have any money hidden away from the government. At the same time, however, he conceded that, if he had had such money hidden away, he would not have told the government of it. He said: "Well, if I had the money, I have to be honest, I wouldn't tell them."
 
 
 53
 Given this testimony, the district court did not abuse its discretion in finding that it was not reasonably likely that the jury could have been affected by the witness' lie.
 
 CONCLUSION
 
 54
 An exclusion for cause is not automatically improper in every case in which the court has failed to ask the excused juror whether he or she could impartially weigh the evidence. Such an inquiry is a prerequisite to a trial judge's finding of actual bias. But it need not be undertaken in the narrow category of cases of implied (presumed) bias--those "exceptional situations" in which the presumption of bias is mandatory. Moreover, today we hold that, where facts developed upon voir dire reveal a close similarity between a prospective juror's prior activities and the conduct charged against the defendant in the indictment, the trial court may, in its discretion, infer bias on the part of the juror, and may excuse the juror for cause without any further inquiry into the juror's ability to be impartial.
 
 
 55
 In the instant case, the district court did not abuse its discretion in finding actual bias with respect to Jurors Nos. 27, 38, and replacement 38, or in inferring bias on the part of Juror No.7. The decision to excuse these jurors for cause, therefore, cannot be reversed. In addition, the court did not err in finding that there was no reasonable likelihood that the perjured testimony admitted at trial could have affected the jury's verdict.
 
 
 56
 Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 Appellants claim that the excusals warrant automatic reversal of their convictions because the prosecution in this case had exhausted all of its peremptory strikes. The allegedly improper excusals, they therefore argue, increased the peremptory strikes allotted to the prosecution beyond the number allowed by Federal Rule of Criminal Procedure 24(b). Since we find that the jurors were in fact properly excused, we do not need to decide what the effect of improper excusals in these circumstances would be
 
 
 [2]
 Appellants challenged the dismissal of replacement Juror No. 38 in their motion of January 22, 1996. It is not clear whether they have preserved this challenge on appeal
 
 
 [3]
 While Rivera does not make any independent mention of the improper dismissal of prospective jurors in his brief, he does adopt the arguments of his co-appellant Devery
 
 
 [4]
 Counsel also have at their disposal peremptory strikes, which can be used to excuse jurors for any reason, save impermissible grounds such as race or gender. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (race-based strikes unconstitutional); J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (gender-based strikes unconstitutional). Peremptory strikes allow the parties to ferret out more subtle biases. As Chief Justice Rehnquist has noted: "Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges." McDonough Power Equip., 464 U.S. at 554, 104 S.Ct. at 849. Unlike challenges for cause, peremptory strikes are not constitutionally required, but have long been an established part of jury selection. See Stilson v. United States, 250 U.S. 583, 586, 40 S.Ct. 28, 29-30, 63 L.Ed. 1154 (1919)
 
 
 [5]
 This is a variation of the standard used by trial judges to excuse jurors for cause because of their views on the death penalty--"whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (citation omitted). The Witt standard has often been cited as the standard for challenges of jurors for cause. See, e.g., Kirk v. Raymark Indus., 61 F.3d 147, 153 (3d Cir.1995); United States v. Salamone, 800 F.2d 1216, 1226 (3d Cir.1986). But in its precise terms, it applies only to jury selection in capital cases
 
 
 [6]
 Indeed, a trial judge might find that a juror is biased even in a situation where, when specifically asked, the juror professes that he or she could be impartial. Witt and Ploof make clear that the judge need not automatically accept the juror's claim of partiality or impartiality, but instead must make an independent evaluation of the juror's credibility. See Witt, 469 U.S. at 428 & n. 9, 105 S.Ct. at 854 & n. 9; Ploof, 464 F.2d at 118; see also Murphy v. Florida, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975) (a juror's representations concerning his or her ability to judge a case fairly and impartially are not dispositive)
 
 
 [7]
 To the extent that the term "implied bias" may suggest only a hint or possibility of bias, it probably represents an unfortunate choice of words. Certain relationships or past experiences are strongly correlated with bias in jurors and thus suggest a very high risk of partiality. As a result, when they exist, the law "presumes" that a juror is indeed biased. Accordingly, we prefer the phrase "presumed bias," but we also employ the more traditional "implied bias" in view of its use by many courts. See infra note 8
 
 
 [8]
 See, e.g., Person v. Miller, 854 F.2d 656, 664 (4th Cir.1988); United States v. Nell, 526 F.2d 1223, 1229 (5th Cir.1976); Hunley v. Godinez, 975 F.2d 316, 318-20 (7th Cir.1992); Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir.1990); Burton v. Johnson, 948 F.2d 1150, 1158-59 (10th Cir.1991)
 Many states also have statutes that set forth conduct or status that will automatically disqualify jurors without regard to actual bias. See, e.g., Cal.Civ.Proc.Code § 229 (West 1996); Colo.Rev.Stat. Ann. § 16-10-103 (West 1990); N.Y.Crim. Proc. Law § 270.20(1) (McKinney 1993); Tex.Crim. P.Code Ann. § 35.16 (West 1989).
 
 
 [9]
 In Smith, the Court declined to impute bias to a seated juror who, while the case in which he sat was being tried, applied for a job in the District Attorney's office in charge of the prosecution of the same case. The Supreme Court found that a conclusive presumption of bias was inappropriate because it was possible to determine in a post-trial hearing whether or not the juror had been biased. See Smith, 455 U.S. at 215-18, 102 S.Ct. at 944-47
 
 
 [10]
 We reasoned in Garcia that "jurors can and do recognize that a determination regarding a witness' credibility at one trial, under one set of circumstances, is of little moment when that witness' testimony is evaluated, and perhaps challenged by the testimony of new defense witnesses, in the changed environment of a later, independent case." 936 F.2d at 652
 
 
 [11]
 The district court did not indicate that its finding of implied bias was mandatory. We do note, however, that, in support of its finding, the court cited several cases from other circuits where courts held that it was reversible error not to presume that jurors who had particular employment relationships or prior experiences were biased. See, e.g., United States v. Allsup, 566 F.2d 68 (9th Cir.1977) (presuming bias on the part of two bank tellers at different branches of the bank that the defendant was accused of robbing). But we have specifically rejected that position. See Brown, 644 F.2d at 105 (declining to follow Allsup 's holding)
 
 
 [12]
 Nonetheless, a judge may--particularly when considering whether some marginal types of disclosed facts are enough to show inferable bias--ask about a juror's impartiality and might be persuaded by the force of the juror's assurance (even though another judge would have discretion to take the disclosed fact and make a finding of inferred bias without further inquiry)
 
 
 [13]
 This situation can be distinguished from the cases, such as Allsup, dealing with disqualifications based on occupational or special relationships. See supra note 11. The case at hand, instead, is more akin to Hunley, 975 F.2d 316, where the Seventh Circuit stated that "courts have presumed bias in cases where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial." Id. at 319
 
 
 [14]
 Rivera offered an additional argument that the same witness perjured himself at trial when he testified that he had bought four properties in New Rochelle, New York, and when he testified that he had given cash to Rivera to purchase these properties. We reject this claim summarily, and agree with the district court that Rivera has simply not established that this testimony constituted perjury
 
 
 [15]
 The court gave three additional reasons in support of its finding: (1) the fact about which the witness lied was collateral, in that it stemmed from his relationship with the government, as opposed to his dealings with the defendants; (2) the testimony was not a crucial component of the government's case; and (3) the perjury provided only cumulative evidence to impeach the witness' credibility, given that he was subjected to extensive cross-examination and the jury was given many reasons to doubt his testimony. In view of our holding on the materiality of the perjured testimony, we express no opinion on the validity of these reasons