This is an appeal from the judgment of conviction and sentence of the Chillicothe Municipal Court. Defendant-Appellant William Payne, Jr., was convicted of one count of assault, in violation of Chillicothe Revised Ordinances 537.03, a first-degree misdemeanor. The trial court sentenced appellant to one hundred and eighty days in the Ross County Law Enforcement Complex and imposed a $500 fine against him. Appellant argues that the trial court erred in failing to declare a mistrial when one of the jurors revealed that he previously been married to the alleged victim's aunt. We find that the trial court properly exercised its discretion when it refused appellant's request for a mistrial, and we overrule appellant's sole assignment of error.
 STATEMENT OF THE CASE
On October 26, 1998, appellant was charged with assaulting James L. Mazzarini, Jr. Appellant pled not guilty to the charge and demanded a jury trial. The case proceeded to trial on February 4, 1999. After the parties were given an opportunity to voir dire prospective jurors, eight jurors were seated and sworn. The trial court dismissed the remainder of the jury pool.
Appellee called Mazzarini, the alleged victim of the assault, as its first witness. At that point, one of the jurors, Fred Burke, Jr., realized, for the first time, that Mazzarini was his former nephew. Appellant moved for a mistrial, and the trial court excused the remainder of the jury from the courtroom. The court had Burke sworn, and proceeded to question him regarding his relationship with Mazzarini.
Burke testified that he had been married to Mazzarini's aunt for approximately eight years. However, Burke said that he had never been close to Mazzarini, and that the two had not had any contact since 1990 or 1991, other than perhaps to greet each other on the street. Burke did not realize his connection with the victim during voir dire because he did not know Mazzarini's last name. Burke assured the court that nothing in his prior relationship with Mazzarini or Mazzarini's family would affect his ability to be fair and impartial.
After both parties had an opportunity to examine Burke, the trial court found that Burke could perform his duties as a juror. Appellant renewed his motion for a mistrial, arguing that had he known of the relationship between Burke and Mazzarini during voir dire, he would have exercised a peremptory challenge to remove Burke. The trial court offered to dismiss Burke and proceed to try the case to a seven-member panel. However, appellant was unwilling to agree to try the case to less than a full jury. The trial court then overruled appellant's renewed motion for a mistrial.
The jury returned a guilty verdict against appellant. The trial court proceeded directly to sentencing and sentenced appellant to one hundred and eighty days in the Ross County Law Enforcement Complex and fined him $500. Appellant filed a timely notice of appeal and presents one assignment of error for our review.
ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR A MISTRIAL WHEN IT BECAME KNOWN THAT ONE OF THE JURORS HAD BEEN THE ALLEGED VICTIM'S UNCLE.
 OPINION
In his sole assignment of error, appellant argues that the trial court erred in refusing to declare a mistrial when Burke revealed his connection to the alleged victim. Crim.R. 24 (B)(10) provides that a juror may be challenged for cause if"he is related by consanguinity or affinity within the fifth degree to the person alleged to be injured or attempted to be injured by the offense charged." Under this rule, Burke clearly could have been dismissed for cause during voir dire if he had still been married to Mazzarini's aunt. Appellant argues that the result should not change merely because Burke and Mazzarini aunt are divorced.
Appellant's argument raises the question of whether or not Burke's divorce severed his relationship by affinity to Mazzarini for purposes of Crim.R. 24 (B)(10). Under a strict reading of the rule, Burke was not subject to challenge for cause because he was not related to Mazzarini by affinity at the time of the trial. On the other hand, appellant makes a compelling argument for a more liberal reading of Crim.R. 24 (B)(10). The rationale behind automatic challenges for cause is that certain relationships create such a danger of bias that the law presumes certain jurors cannot be fair and impartial. See United States v. Torres (C.A.2, 1997), 128 F.3d 38. As appellant argues, the potential for bias between an uncle and nephew related through affinity is sufficiently strong that such bias could reasonably be presumed even if the marriage that created the uncle/nephew relationship has since ended in divorce.
Neither party has cited any cases on point, and our own research has failed to locate any cases that address this issue directly. The likely reason for this dearth of authority is that relationships such as that between Burke and Mazzarini would normally be revealed during voir dire. Regardless of whether or not Crim.R. 24 (B)(10) strictly applies in such circumstances, a trial court would certainly be within its discretion to excuse a juror for cause who was formerly related by affinity to the alleged victim. Even if the trial court refused to excuse the juror for cause, the defendant would no doubt exercise a peremptory challenge to remove such a juror. Thus, in the typical case, a juror in Burke's position would almost certainly have been excused before trial commenced. Indeed, in the instant case, the trial court would have excused Burke even after the trial had commenced, had appellant been willing to proceed with only seven jurors.
Although not directly on point, we find State v. Jones (Sept. 12, 1997), Montgomery App. No. 16123, unreported, instructive to our analysis in the instant case. In Jones, the trial court in a prosecution for manslaughter refused to remove a juror who worked with the victim's brother. Neither party inquired during voir dire whether any of the prospective jurors knew any member of the victim's family. During the first day of the trial, the juror in question recognized the victim's brother as a teacher's aid who worked with her one day a week during the school year. The juror informed the court of this and stated that her emotions were involved in the case and that she was uncomfortable sitting on the jury. However, she emphatically insisted that she could be fair and impartial and follow the court's instructions. The trial court gave the juror the night to think about her participation in the trial. The next day, the juror still insisted that she could be fair and impartial.
The Jones court upheld the trial court's decision to allow the juror to remain on the jury. The court noted that the trial court thoroughly examined the juror about her potential bias. The court also agreed with the trial court that "the juror provided a well-reasoned and articulate analysis of her feelings and her ability to set aside her working relationship with [the victim's brother]." Finally, the court noted that nothing in the juror's answers to the trial court's questions supported removal for cause under Crim.R 24. The Jones court found that the trial court had not abused its discretion and affirmed the judgment of the trial court.
In the instant case, as in Jones, the relationship between Burke and Mazzarini did not come to light until after the trial had commenced. Once the trial has commenced, the court may remove a member of the jury only if he or she is unable to fulfill the duties of a juror. R.C. 2945.29. Whether or not a juror can perform his or her duty is left to the sound discretion of the trial court. State v. Hopkins (1985), 27 Ohio App.3d 196,500 N.E.2d 323. We need not determine whether Burke would have been subject to a challenge for cause because R.C. 2945.29 applies in the instant case, rather than Crim.R. 24 (B)(10).
We find that, once the trial has commenced, the trial court need not remove a juror under R.C. 2945.29 unless it finds actual bias on the part of that juror. When the trial court becomes aware of some reason to suspect bias on the part of a juror, the court should thoroughly examine the juror and allow the parties an opportunity to do so as well. Before deciding whether or not to remove a juror, the court should consider the nature of the potential bias, whether or not the juror could have been removed for cause during voir dire, the juror's own confidence in his or her ability to act impartially, and any other relevant factors.
In the instant case, the examination of Burke conducted by the trial court and the parties was thorough and proper. While Burke and Mazzarini had been related by affinity, Burke testified that they had never been close and that they had rarely seen each other, if at all, for eight or nine years. Burke also assured the trial court that his previous marriage to Mazzarini's aunt would not influence him in any way. He assured the court that he could be fair and impartial and follow the court's instructions. Having itself conducted an examination of Burke, the trial court was in a far better position than this court to determine whether or not Burke could fulfill his duties as a juror despite his previous relationship with Mazzarini.
As with the decision to remove a juror, the decision to grant or deny a motion for a mistrial is left to the sound discretion of the trial court. State v. Phillips (1995), 74 Ohio St.3d 72, 89, 656 N.E.2d 643,661. Given these efforts by the trial court, and the procedure utilized upon discovery of the relationship between Burke and Mazzarini, we find no abuse of discretion by that court when it refused to remove Burke as a juror. Consequently, the court likewise did not abuse its discretion when it denied appellant's motion for a mistrial based on this same action, the refusal to remove Burke from the jury.
Accordingly, appellant's sole assignment of error is OVERRULED. The judgment of the Chillicothe Municipal Court is AFFIRMED.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Municipal Court to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J., and Harsha, J.: Concur in Judgment and Opinion.
 ________________________ David T. Evans, Judge