**UNITED STATES of America,**
**Appellee,**

v.

**Najja LOWE, also known as Najja Fagon, Defendant–Appellant.**

**No. 03–1461.**

United States Court of Appeals,
Second Circuit.

April 20, 2004.

24

Jason P. Gladstone, Westport, Connecticut, for Appellant.

Robert M. Spector, Assistant United States Attorney for the District of Connecticut (Kevin J. O'Connor, United States Attorney for the District of Connecticut, on the brief; Jeffrey A. Meyer, Assistant United States Attorney for the District of Connecticut), New Haven, Connecticut, for Appellee, of counsel.

Present: KEARSE, SOTOMAYOR Circuit Judges, and SWAIN District Judge.*

## SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment entered in the United States District Court for the District of Connecticut (Underhill, J.), it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Defendant-appellant Najja Lowe was convicted, following a jury trial, in the District of Connecticut (Underhill, J.) of one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); Lowe was sentenced principally to 112 months' imprisonment. On appeal, Lowe challenges various evidentiary rulings made by the district court at his trial and the court's failure to remove one of the jurors for cause. While ordinarily a challenge to an evidentiary ruling is reviewed for abuse of discretion, *see United States v. Jones,* 299 F.3d 103, 112 (2d Cir.2002), where a party has failed to object at trial we review only for plain error, *see United States v. Morris,* 350 F.3d 32, 36 (2d Cir.2003). Here, we find no error, much less "plain error."

Lowe argues first that the trial court erred in allowing Special Agent John Fretts of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to testify regarding the origin of the firearm at issue. Fretts's testimony supported the interstate commerce element of the offense charged. Specifically, Lowe contends that (1) Fretts testified to facts outside the scope of his knowledge as a lay witness, (2) Fretts testified to an "ultimate issue," and (3) defense counsel should have been permitted to question Fretts about an alternate theory of the firearm's origin.

■ As to Lowe's first contention, an issue not raised below, we find that Fretts's testimony was sufficiently within the scope of his knowledge as a lay witness that its admission was not error. Fretts testified to visible markings on the firearm that indicated it had been "Made in Brazil" and imported into the United States through "Miami, Florida." His testimony was therefore "not based on scientific, technical, or other specialized knowledge," but instead was "rationally based on [his] perception" as a lay witness. *See* Fed. R.Evid. 701.

Similarly, Lowe's second contention, also not raised below, regarding Fretts's purported testimony on the "ultimate issue," is without merit and, therefore, the admission of the testimony was not error. Fretts never stated any conclusion concerning the "ultimate issue" of whether the interstate nexus element of the offense was established. Rather, Fretts testified about the origin and importation of the firearm in purely non-legal terms. Moreover, even if Fretts's testimony had embraced this ultimate issue, his testimony is not objectionable. *See* Fed.R.Evid. 704(a) ("[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 911 (2d Cir.1997) ("The fact that the lay opinion testimony bears on the ultimate issue in the case does not render the testimony inadmissible.").

■ Lowe's third contention, that the district court erred in refusing to allow defense counsel's questioning of Fretts regarding the possibility that the firearm or its component parts were manufactured in Connecticut, is also unavailing. Because defense counsel admitted to the district court that he had no good faith basis to believe his theory had any evidentiary support, it was well within the district court's

discretion to limit this line of questioning. *See In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988,* 37 F.3d 804, 825 (2d Cir.1994) ("Cross-examination of plaintiffs' experts as to other causation theories-absent a good-faith basis to believe those theories had evidentiary support-was properly excluded."), *abrogated in part on other grounds, Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996).

■ Second, Lowe argues that the district court erred in permitting law enforcement officers to testify as to the statements Lowe made to them on the night of arrest. At trial, the officers testified that Lowe asked, "Who are you? What the f— are you doing here?" Lowe reiterates the objection raised below that the testimony was inadmissible hearsay. "[A] party's own statement," when offered against him, however, is by definition "not hearsay." Fed.R.Evid. 801(d)(2)(A). The district court consequently did not abuse its discretion in admitting it. On appeal, Lowe also raises a new objection to the testimony in arguing that it was not relevant and unduly prejudicial. The testimony, however, was sufficiently relevant to the defendant's consciousness of guilt, and to the reasonableness of the officers' decision to conduct the weapons pat down that provoked Lowe to flee down the stairs and to discard his weapon, to convince us that there was no error in the district court's admission of the testimony. Further, we find that the admission of the officers' testimony was not unfairly prejudicial under these circumstances. *See United States v. Jimenez,* 789 F.2d 167, 171 (2d Cir.1986).

■ Third, Lowe reargues his objection raised below to the relevance of the testimony admitted at trial that Lowe used an alias on the night of his arrest. The district court, however, did not abuse its discretion in concluding that this testimony was relevant, because Lowe indicated prior to trial that he wanted all of the police reports related to his arrest introduced as full exhibits. Because those police reports referenced the defendant by his real name and his alias, the testimony as to Lowe's use of the alias on the night of his arrest was relevant to government's need to assuage any potential concern on the part of the jury that the police reports referred to someone other than the defendant. Lowe raises a further objection to this testimony, for the first time on appeal, in arguing that it was unduly prejudicial. Lowe, however, put the use of his alias in issue by requesting the introduction of all of the police reports pertaining to his arrest, and the government did not argue at trial that defendant's use of an alias demonstrated a consciousness of guilt. Under these circumstances, the testimony's admission was not unduly prejudicial. *See id.*

■ Finally, Lowe claims that the district court erred when it failed to remove juror McCarthy for cause. In response to one of the standard voir dire questions, McCarthy disclosed that her sister works for the appellate division of the Chief State's Attorney's Office of Connecticut. At sidebar, the prosecutor informed the district court and opposing counsel that he knew McCarthy's sister from his previous employment at the Chief State's Attorney's Office, but that he did not know McCarthy. Defense counsel stated that he "might ask that she be excused" but never raised the issue again. Despite claims to the contrary in appellant's brief, Lowe's counsel did not seek to strike juror McCarthy for cause; declined to ask

McCarthy any questions to establish the foundation for a challenge based on impartiality; declined to exercise a peremptory challenge to McCarthy; and indicated that he was satisfied at the conclusion of jury selection. Because Lowe did not properly challenge the seating of juror McCarthy, his challenge on appeal is waived. *See United States v. Ragland,* 375 F.2d 471, 475 (2d Cir.1967) ("Failure to object to the composition of the jury has long been held to result in a waiver of the right of the accused to be heard by an impartial jury.").[1]

For these reasons, the judgment of the district court is AFFIRMED.

---

1. We are cognizant of our recent ruling in *United States v. Brown,* 352 F.3d 654, 663 (2d Cir.2003), in which we conducted "plain error" review of an unpreserved *Batson* objection, rather than concluding that the objection had been waived. Even if the issue were not waived here, however, we would find no error in the district court's permitting McCarthy to serve on the jury because defendant did not show actual, inferable, or implied bias. In order to show actual bias, a juror must first have been questioned as to whether she can remain impartial despite the alleged source of bias. *See United States v. Torres,* 128 F.3d 38, 44, 47 (2d Cir.1997). Because defense counsel did not question McCarthy as to whether she could remain impartial despite a potential source of bias, the district court had no basis to excuse McCarthy for any actual bias. *See* *id.* at 43–44. Further, in the absence of any evidence suggesting that the prosecutor and McCarthy's sister worked recently or closely together or that McCarthy knew that the prosecutor once worked in the same office as McCarthy's sister, no bias could have been inferred. Indeed, McCarthy did not respond at the start of voir dire when the potential jurors were asked whether anyone had any familiarity with counsel. Although the existence of implied bias makes removal of a juror mandatory, this is not one of those "exceptional situations in which objective circumstances cast concrete doubt on the impartiality of a juror." *Id.* at 45–46 (citations and internal quotation marks omitted) (noting that implied bias "deals mainly with jurors who are related to the parties or who were victims of the alleged crime").