09-1637-pr
Romance v. Bradt

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of August, two thousand ten.

Present:
>ROBERT A. KATZMANN,
>PETER W. HALL,
>>*Circuit Judges*,
>PAUL G. GARDEPHE,
>>*District Judge*.[*]

_____

RAVON ROMANCE,

>*Petitioner-Appellant*,

>v.                                                  No. 09-1637-pr

MARK BRADT,

>*Respondent-Appellee*.

_____

For Petitioner-Appellant:          SUSAN D. FITZPATRICK, Red Hook, NY
For Respondent-Appellee:          ROSEANN B. MACKECHNIE, Deputy Solicitor General

_____

[*] The Honorable Paul G. Gardephe of the United States District Court for the Southern District of New York sitting by designation.

for Criminal Matters (Barbara D. Underwood, Solicitor General, Lisa Ellen Fleischmann, Assistant Attorney General, *of counsel*) *for* Andrew M. Cuomo, Attorney General of the State of New York, New York, NY

Appeal from a denial of a petition for writ of habeas corpus in the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Petitioner Ravon Romance was convicted subsequent to a state jury trial of burglary, kidnaping, and robbery. Petitioner forced his victim, Brittni Von Ahlefeld, to the roof of her apartment building on July 10, 1998, bound her to a pipe, robbed her of her money and jewelry, stripped her torso, and masturbated behind her. The night before the second day of jury deliberations in petitioner's trial, one of the jurors, Bianca Nieves, received a phone call from a man who identified himself as "Justice" and who asked her, "why are you sending my friend away?" The next day, having notified the court of the previous night's events, the trial judge inquired as to whether Nieves could continue to deliberate in good faith. After receiving clear reassurances from Nieves that she could, the trial judge allowed her to complete her jury service. The jury ultimately returned a guilty verdict on all charges and the petitioner was sentenced to consecutive, indeterminate prison terms of 25 years to life imprisonment on the burglary and kidnaping counts, and a concurrent term of 3.5 to 7 years for the robbery count. We assume the parties' familiarity with the facts and procedural history of the case.

Petitioner argues principally that the state trial court erred in refusing to dismiss Nieves and declare a mistrial. On direct appeal, the Appellate Division affirmed the petitioner's conviction, stating that the trial court had conducted a "'probing and tactful' inquiry into the circumstances of the call, and obtained unequivocal assurances from the juror that the incident

2

would not affect her ability to deliberate impartially." *People v. Romance*, 35 A.D.3d 201, 203 (1st Dep't 2006) (internal citation omitted). The New York Court of Appeals denied leave to appeal. *People v. Romance*, 8 N.Y.3d 926 (2007). The federal district court, hearing the petition, agreed with the state courts below that the "judge did the proper thing in eliciting her fairness," agreed that the juror was not tainted, and concluded that "[t]he decision of the Appellate Division upholding the trial court in this regard is appropriate." J.A. 16. On September 8, 2009, this Court granted petitioner a certificate of appealability on the issue of "whether a juror who received a threatening phone call should have been excused from the jury." J.A. 3.

We review *de novo* the district court's grant or denial of a petition for a writ of habeas corpus. *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003). Because the petitioner's claim was first adjudicated by the state court on the merits, the petition is governed by 28 U.S.C. § 2254(d) as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, there is a presumption of correctness that attaches to state court factual findings. *Id.* § 2254(e)(1). Such deference accordingly attaches to the trial court's determination of juror impartiality. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 813 (2d Cir. 2000) ("the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial"); *see also Rushen v. Spain*, 464 U.S. 114, 120 (1983) (per curiam) (stating, in a pre-AEDPA case, that the substance and effect of *ex parte* communications with a juror was entitled to a presumption of correctness because they are factual findings by the state court). Moreover, "due process does not require a new trial every time a juror is placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such

3

occurrences when they happen." *Id.* Indeed, the trial court retains "broad discretion" in taking action to fulfill its duty to ensure juror impartiality. *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997).

In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court stated that "[i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Id.* at 229. The presumption is not, however, conclusive, and the "burden rests heavily upon the Government to establish . . . that such contact with the juror was harmless to the defendant." *Id.*

Though our review here begins with the *Remmer* presumption, we are satisfied, in light of the record and the state trial judge's actions, that the presumption was overcome. The juror's assurances that she could remain impartial were clear and unequivocal, and her distressed reactions in the immediate aftermath of the call were reasonable under the circumstances. We therefore decline the petitioner's invitation to apply the doctrine of implied bias, *see Torres*, 128 F.3d at 41, which is, in any event, "reserved for 'exceptional situations.'" *Id.* at 46. With no occasion to second-guess the state trial judge's factual determination as to the juror's impartiality, we accord it its due "presumption of correctness" under AEDPA and therefore **AFFIRM** the dismissal of the petition by the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK