In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-2488

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BADAYAH BRAZELTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 06-CR-00144(01)—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED OCTOBER 15, 2008—DECIDED MARCH 3, 2009
AMENDED MARCH 10, 2009

Before EASTERBROOK, *Chief Judge*, and COFFEY and WOOD, *Circuit Judges*.

COFFEY, *Circuit Judge*. Police arrested Badayah Brazelton as he exited his home after a witness identified him as the assailant in a shooting. Following his arrest, police obtained a search warrant for Brazelton's home and discov-

ered guns, crack, marijuana, and other drug paraphernalia. Brazelton was never charged with the shooting, but based on the items found in his house during the search, Brazelton was tried and convicted before a jury on two counts of gun crimes, 18 U.S.C. § 924(c), (g), and three counts of drug crimes, 21 U.S.C. § 841(a)(1). The court sentenced him to 425 months of imprisonment. Appellant Brazelton argues that his conviction should be set aside, arguing that one of the jurors seated was related to the victim of the shooting that led to Brazelton's arrest and the search of his home. He makes this argument even though the victim did not testify and his name was not mentioned again after it was mentioned at voir dire. More importantly, though, Brazelton waived the issue raised for argument at trial even though he was aware of the juror's relationship at voir dire, and told the judge during the juror selection process that he did not want the juror to be struck for cause. Brazelton also claims, and the government concedes, that he should be resentenced in light of *Kimbrough v. United States*, 128 S. Ct. 558 (2007) because the district court followed the then-governing case law rejecting Brazelton's argument that the court had discretion to impose a below-guidelines sentence based on a disagreement with the crack-powder ratio. We agree and remand for resentencing and affirm Brazelton's conviction.

## Background

The events leading to Brazelton's conviction began when Officer Tim Richardson of the Michigan City, Indiana, police department was dispatched to the scene of a shooting where an eyewitness informed the officer that

Brazelton was the shooter. The police found Brazelton at his home, arrested him and, after obtaining a search warrant, conducted a search of his house and discovered drug paraphernalia, and about 230 grams of marijuana, some 190 grams of crack, and about 95 grams of cocaine, ammunition, and a gun.

Brazelton was indicted on charges of possession of a firearm by a felon, 18 U.S.C. § 924(g), possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c), as well as three counts of possession of drugs with intent to distribute, 21 U.S.C. § 841(a)(1), one each for cocaine, crack, and marijuana. During voir dire, the court advised the jury of a list of several people that might conceivably be called as witnesses without stating their connection to the case and asked if the jurors knew any of them. The list included Brandon Byrd, the victim of the shooting that led to the defendant's arrest. Juror Number Four said that Byrd was a second cousin and that he saw Byrd infrequently, but that if Byrd did testify, he would not give his testimony any more or less weight than any other witness. The prosecutor expressed concern about Juror Number Four's impartiality because Byrd himself might testify or a witness might discuss Byrd's shooting. The prosecutor suggested asking Juror Number Four, "If you learned that Mr. Byrd were the victim of a crime connected with this case, would that influence your decision?" At the time, Brazelton's counsel stated that he did not object to the question, but told the judge he did not see any reason to ask it, and the judge acquiesced and did not refer to it again. The judge heard arguments on chal-

lenges for cause to two jurors, but Brazelton's counsel never challenged Juror Number Four for cause. Before moving on from the cause challenges, the court gave Brazelton a second chance to object to Juror Number Four, which he expressly declined:

> THE COURT: Does the Defense have a position to take on either those cause challenges or—you're not making a cause challenge on [Juror Number Four] or are you? You had talked about it. I just want to verify that you are not.
>
> MR. BARRET: No, Your Honor.

Both sides exercised peremptory strikes but left Juror Number Four on the jury panel.

The jury convicted Brazelton on all five counts. At sentencing, the trial judge grouped the drug offenses and felon-in-possession of a weapon offense together. U.S.S.G. § 3D1.2(d). Because Brazelton's criminal activity involved the crack, powder cocaine and marijuana, the court used the drug equivalency tables, U.S.S.G. § 2D1.1 cmt. 10, when determining that Brazelton was responsible for the equivalent of 3839.71 kilograms of marijuana. This corresponded to a base offense level of 34, and the court increased it by two levels for obstruction of justice. U.S.S.G. § 2D1.1(a)(3). Combined with a criminal history score of 5, this yielded a guidelines range of 292 to 365 months for the drug and felon-in-possession counts. For possession of a firearm in furtherance of a drug trafficking crime, the court determined the guidelines sentence to be the mandatory minimum of 60 months. U.S.S.G. § 2K2.4(b); 18 U.S.C. § 924(c)(1)(A)(I).

Brazelton objected to the 100-to-one ratio between crack and powder cocaine that was a part of the drug equivalency tables at the time of sentencing, but the court rejected the objection based on the governing law at the time of sentencing. After considering the statutory factors under 18 U.S.C. § 3553(a), the trial court imposed the greatest period of confinement within the guidelines range for the grouped offenses, 365 months, as well as the mandatory-minimum sentence for the other firearm count, and ordered them to run consecutively. (Even though the court in its written sentencing memorandum made an error (immaterial) when it referred to 365 months as the midpoint of the advisory range—when it was the top of the range—that error is harmless since "[a] sentence pronounced in a defendant's presence prevails over a written sentence when the two conflict." *United States v. McHugh*, 528 F.3d 538, 539 (7th Cir. 2008).)

**Analysis**

**A.  Juror Number Four**

On appeal, defendant-appellant Brazelton argues that because juror number four served on the jury, Brazelton contends he was denied his constitutional right to an impartial jury. Brazelton asserts that we should review for an abuse of discretion on the part of the district judge for failing to remove the juror for cause, but the case Brazelton cites in support of this proposition is distinguishable because in that case the party raised the objection in the district court. *Salvato v. Illinois Dept. of*

*Human Rights*, 155 F.3d 922, 927 (7th Cir. 1998) ("the plaintiffs' lawyer moved to strike Abramson for cause"). As the government argues, Brazelton waived his objection to Juror Number Four when he expressly declined the court's specific invitation to challenge the juror for cause at trial. A more obvious intentional relinquishment of a known right, *see United States v. Olano*, 507 U.S. 725, 733 (1993), is hard to imagine.

The defendant-appellant attempts to sidestep and cast aside his waiver by contending that his is a claim of "implied bias," which, he insists, cannot be waived. The concept of implied bias is well-established in the law. Under the doctrine, a court must excuse a juror for cause if the juror is related to one of the principals in the case, *see, e.g.*, *United States v. Annigoni*, 96 F.3d 1132, 1138 (9th Cir. 1996). Such a juror may well be objective in fact, but the relationship is so close that the law errs on the side of caution.

In *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968), the Second Circuit traced the implied bias doctrine back to Chief Justice John Marshall who wrote that:

> Why is it that the most distant relative of a party cannot serve upon his jury? Certainly the single circumstance of relationship, taken in itself, uncon-nected with its consequences, would furnish no objec-tion. The real reason of the rule is, that the law suspects the relative of partiality; suspects his mind to be under a bias, which will prevent his fairly hearing and fairly deciding on the testimony which may be offered to him. The end to be obtained is an impartial jury; to secure this end, a man is prohibited from serving on it

> whose connection with a party is such as to induce a suspicion of partiality.

*United States v. Burr*, 25 F.Cas. 49 (No. 1492g)(C.C.D. Va. 1807). This opinion, quoted with approval by this court in *United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000), indicates that any degree of kinship with a principal in a case would preclude service on a jury for that case.

Brazelton asks us to presume bias because Juror Number Four's second cousin was the victim of the shooting that resulted in the investigation leading up to the drug and gun charges against Brazelton. We can assume that Byrd, the victim of the original (but un-charged) crime, could not himself sit on Brazelton's jury because his vote on the charged crimes might possibly be influenced by a desire to extract punishment for the uncharged crime. Based on his history with Brazelton, Byrd could not sit even if he swore to be impartial because "the law errs on the side of caution." *Polichemi*, 219 F.3d at 704. For the same reasons, extending the disqualification to the victim's second cousin might seem prudent. *Cf. Conaway v. Polk*, 453 F.3d 567, 573-74 (4th Cir. 2006). On the other hand, though, the record contains no evidence that Juror Number Four even knew that Brazelton was once suspected of the shooting of Byrd, his second cousin. Furthermore, no offer of proof to the court was ever made. Nor was anything said during the trial that would have given Juror Number Four this information as Byrd's name was not even mentioned after voir dire, and the mention in voir dire gave no indication of *how* Byrd was involved in the case. But silence of the record on these points is

relevant only to a claim of actual bias, in which a defendant must establish that the alleged bias actually affected the juror's vote. *Smith v. Phillips*, 455 U.S. 209, 216-17 (1982). To show implied bias, the defendant need not demonstrate or establish that the relationship actually affected the juror's judgment; the effect is presumed "regardless of actual partiality." *United States v. Wood*, 299 U.S. 123, 134 (1936). So the question comes down to whether the relationship is close enough to assume bias.

We need not answer that question, since Brazelton's contention that implied bias cannot be waived, is wrong. The Supreme Court has referred to the trial court's "duty" to select an impartial jury, *Frazier v. United States*, 335 U.S. 497, 511 (1948), and the Second Circuit has written that "the presiding trial judge has the authority *and responsibility*, either upon counsel's motion or sua sponte, to dismiss prospective jurors for cause," *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (emphasis added). In a recent case the Sixth Circuit held that even if defense counsel's decision to keep a biased juror on the panel could be classified as a strategic decision, that strategy might also be referred to as ill-advised and unreasonable, and the presence of a biased juror on the panel would require reversal. *Franklin v. Anderson*, 434 F.3d 412, 428 (6th Cir. 2006); *see also Miller v. Webb*, 385 F.3d 666, 676 (6th Cir. 2004). The Second Circuit has not gone so far, suggesting only that there can be no waiver where the juror's bias or alleged bias is revealed at voir dire and the district court erroneously rejects a challenge for cause. *United States v. Nelson*, 277 F.3d 164, 204-06 (2d Cir. 2002); *see also Ross v. Oklahoma*,

487 U.S. 81, 316 (1988) ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had the petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned.").

In this circuit, there is no ambiguity on the question whether the right to an impartial jury can be waived. We have held that "[t]he Sixth Amendment right to an impartial jury, like any constitutional right, may be waived." *United States v. Zarnes*, 33 F.3d 1454, 1472 (7th Cir. 1994); *accord United States v. Joshi*, 896 F.2d 1303, 1307 (11th Cir. 1990). Brazelton's on-the-record decision to pass up not one, but two opportunities to ask that Juror Number Four be struck for cause was a waiver. If a defendant is allowed to twice forego challenges for-cause to a biased juror and then allowed to have the conviction reversed on appeal because of that juror's service, that would be equivalent to allowing the defendant to "plant an error and grow a risk-free trial." *United States v. Boyd*, 86 F.3d 719, 722-23 (7th Cir. 1996).

## B. Sentencing

Brazelton's second argument, that his sentence should be remanded in light of *Kimbrough v. United States*, 128 S. Ct. 558 (2007), fares much better. At the time of sentencing, our case law precluded district courts from imposing a sentence based on the court's disagreement with the crack-powder ratio, *see United States v. Jointer*, 457 F.3d 682, 686-88 (7th Cir. 2006), thus the trial judge properly rejected

Brazelton's argument to do just that. After *Kimbrough*, even in a "mine-run case," district courts are allowed to impose lesser sentences after a determination that the 100-to-one ratio produces a sentence greater than necessary for a particular defendant. *Kimbrough*, 128 S. Ct. at 575. And this new discretion applies in cases like Brazelton's that involve the equivalency tables because the tables embodied the 100-to-one ratio. *See United States v. Williams*, 276 Fed. App'x 491, 493 (7th Cir. 2008). Brazelton raised this issue in the district court and the district court gave no explanation as to whether it would have imposed the same sentence if it had the discretion to consider the disparity. Brazelton is entitled to a remand for resentencing. *See United States v. Padilla*, 520 F.3d 766, 774 (7th Cir. 2008).

## Conclusion

We AFFIRM Brazelton's conviction and REMAND for resentencing in light of *Kimbrough.*