**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 19, 2022[*]
Decided May 6, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-2368

| | |
|---|---|
| GABRIEL RAMIREZ | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 15-cv-365-wmc |
| | |
| ZACHARY SWEEN, et al., | William M. Conley, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Gabriel Ramirez, a Wisconsin inmate, contends that at his unsuccessful trial under 42 U.S.C. § 1983 against prison guards for using undue force to subdue him, the district court erred in its discretionary rulings and was biased. Ramirez does not

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

contend that the verdict lacked sufficient evidence, and his contentions about the discretionary rulings and bias are unpersuasive. Thus, we affirm.

We recite the facts from the record in the light most favorable to the prevailing party, leaving credibility determinations to the jury. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). On Ramirez's first morning at Dane County Jail, a guard saw that he was not wearing his jail-issued shirt as required. Afterwards, guards assembled to escort Ramirez to segregation. When Ramirez did not cooperate, the guards pinned him to a wall, brought him to the floor, hit him, and restrained him in a chair in order to move him to segregation. Ramirez sued, and after a two-day trial on liability, the jury found for defendants on all claims. That ended the case; there was therefore no reason for the jury to consider the issue of damages.

On appeal, Ramirez raises four discretionary issues. We give great deference to the district court's management of discretionary pretrial and trial matters. *United States v. Causey*, 748 F.3d 310, 316 (7th Cir. 2014). And even if the court made an error, that error would be harmless and not grounds for reversal unless it affected Ramirez's substantial rights. *See* FED. R. CIV. P. 61.

Ramirez's first issue relates to discovery. Before trial, defendants sought updated medical records from Ramirez. He, however, refused to authorize the release until about a month before trial was set to begin. Once the guards received the medical records, they added excerpts from the records to their proposed exhibit list about a week before trial was to start. Ramirez objects to the district court's acceptance of that late submission. But the court's decision to accept the submission was permissible for two reasons. First, the tardiness was precipitated by Ramirez's delayed authorization. Second, defendants never used the excerpted medical records during trial because they were relevant only to damages. Because the trial did not proceed to the damages phase, the records had no substantial influence on the jury. *See Est. of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012); FED. R. CIV. P. 61.

Ramirez's second issue concerns proposed questions for voir dire. Ramirez objected to asking prospective jurors whether they thought "prisoners" had constitutional rights and should be able to sue. The court responded that those questions could help Ramirez by exposing any potential bias against prisoners; nonetheless, it offered to edit the questions to refer only to "people in jail," or to forgo the questions altogether. Ramirez agreed to the edited version, which the court used. Because Ramirez agreed to the revised question, he waived this issue. *See United States v. Brazelton*, 557 F.3d 750, 755 (7th Cir. 2009).

Ramirez's third issue involves the evidence at trial. On this issue, Ramirez raises several arguments. During trial, the court allowed Ramirez to play a video recording of the incident after his opening statement and again when, in the court's view, it was necessary to refresh a witness's recollection, but not more often, as Ramirez wanted. Ramirez does not explain why extra replays of the recording were necessary; thus, the court's limit on cumulative evidence was reasonable. *See* FED. R. EVID. 403. Ramirez next complains that the court instructed defendants that they could refer to Ramirez's convictions for domestic violence only as convictions for "physical violence," a change Ramirez contends biased the jury against him. But the court acted within its discretion by attempting to reduce the potentially prejudicial impact of the conviction. *See Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 626–27 (7th Cir. 2009). Finally, Ramirez protests that Michael Haure, one of the guards involved in the incident, never testified. The defendants listed Haure as a potential witness but never said that he would testify. After the first day of the two-day trial, Ramirez wanted Haure to testify the next day. But the defendants responded that he was not available, and the court told Ramirez that it was too late to compel his attendance for the next day. Ramirez did not tell the district court, as he needed to, why Haure's testimony was necessary. *See Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). The court acted within its discretion, particularly without Ramirez's perspective on the importance of Haure's testimony, not to allow the testimony, which the record suggests would be merely cumulative: four other guards present during the incident testified. *See id.* at 1047–48.

Ramirez's fourth issue involves closing arguments. During closing argument, the defense asked whether any jurors had belligerently refused to obey security procedures upon entering the courthouse. The court interjected that counsel must not make "golden rule" arguments (litigants should not ask jurors to imagine themselves in a litigant's position). The court gave Ramirez a similar warning during his closing argument when Ramirez asked the jurors to imagine themselves "going through a situation" like his. Ramirez protests these instructions, but these instructions were a reasonable exercise of the court's discretion. *United States v. Roman*, 492 F.3d 803, 805–06 (7th Cir. 2007).

We end with a final matter. Ramirez argues that the district court's adverse rulings reflect bias. But adverse rulings are not themselves evidence of bias. *Litkey v. United States*, 510 U.S. 540, 555–56 (1994). Ramirez insists that he has shown additional evidence of bias: in instructing the jury after the close of evidence, the district court said that Ramirez "is a prisoner" rather than "was a prisoner during the events," which Ramirez argues prejudiced the jury against him. While this statement was arguably

irrelevant, it does not reflect bias. The court's prudent management of voir dire to avoid prejudice against prisoners, its careful restriction of the defendants' questions about domestic violence to avoid inflaming the jury, and its even-handed prohibition of golden-rule arguments show its fairness and impartiality.

We have considered Ramirez's other arguments—about calling other witnesses, his recruited counsel, the bifurcated trial, the trial court's refusal to accept late filings from him, and the order of witnesses—and none is adequately developed to merit further discussion. Additionally, we grant Ramirez's post-briefing motion to supplement the record with newly discovered evidence. We have reviewed the additional transcript he provides, but it does not change the outcome.

AFFIRMED