The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: July 6, 2023

**NO. S-1-SC-39057**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**MICHAEL J. ROMERO,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Abigail Aragon, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Meryl Elizabeth Francolini, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**THOMSON, Justice.**

{1}    "The constitutional command for trial by an impartial jury casts upon the judiciary the exercise of judgment in determining the circumstances which preclude that free, fearless and disinterested capacity in analyzing evidence which is indispensable if jurymen are to deal impartially with an accusation." *Dennis v. United States*, 339 U.S. 162, 181 (1950) (Frankfurter, J., dissenting) (internal quotation marks omitted). Defendant Michael J. Romero alleges that his Sixth Amendment right to a fair and impartial jury was violated because one of his jurors revealed during voir dire that he knew the investigator in the case. Defendant did not inquire into the juror's potential bias during jury selection, did not challenge the juror for cause, did not use an available peremptory challenge on the juror, and did not otherwise object to the juror during jury selection. We conclude that the juror's statements did not violate Defendant's Sixth Amendment right to an impartial jury, and that Defendant both failed to preserve and waived any objection to the juror's alleged bias. We therefore affirm the Court of Appeals. We write to clarify the types of bias that may present during jury selection, and to explain that failing to raise an objection to a juror's perceived bias implicates issues of both preservation and waiver.

## I. BACKGROUND

{2} Defendant was convicted of second-degree murder and tampering with evidence relating to the shooting death of his son's friend. During voir dire at his trial, the State asked the entire venire whether they knew the lead crime scene investigator, Commander Pam Sandoval. Juror 11 said that he knew the witness, and the following exchange occurred:

> **Juror 11:** I've known Detective Sandoval for twenty plus years. I currently serve under — I'm one of her coaches at the West Las Vegas softball program.
>
> **Prosecutor:** So you're — one of the things you do is the softball program for West Las Vegas?
>
> **Juror 11:** Yes, sir.
>
> **Prosecutor:** Is she the head coach?
>
> **Juror 11:** Yes, sir.
>
> **Prosecutor:** We anticipate calling Ms. Sandoval as one of the witnesses. Would you be able to set aside that relationship that she's in a sense your boss and be able to make a decision based on the evidence?
>
> **Juror 11:** That's tough, I do socialize with her and I do know her on a personal basis . . . .
>
> **Prosecutor:** Would it be difficult for you, let's say you had to vote not guilty, let's say the facts came back and you vote, would that be difficult to face in this [inaudible]?
>
> **Juror 11:** It can be. It can compromise the relationship.

After this colloquy, there were no further questions of Juror 11 relating to Commander Sandoval by the State, Defendant, or the court, and neither party moved to excuse Juror 11 for cause.

{3} After the court considered challenges for cause, it went down the list of the remaining potential jurors in order. One by one, the judge read the jurors' names, and each party was given the opportunity to accept the juror or exercise a peremptory challenge. When the judge got to Juror 11, Defendant had three peremptory challenges remaining. The State and defense counsel each accepted Juror 11, and no peremptory challenge was used. With Juror 11 empaneled, the court continued to seat the remaining jury and two alternates. Defendant eventually used his final three peremptory challenges on other jurors before a full panel was chosen.

{4} On appeal, Defendant now alleges the colloquy described above revealed actual bias by Juror 11,[1] resulting in a violation of his Sixth Amendment right to a trial by an impartial jury. In a memorandum opinion, the Court of Appeals affirmed Defendant's conviction of second-degree murder, concluding that Defendant did not

---

[1]Defendant alleges bias of two different jurors. Because Defendant's briefing and grounds for requested relief only include arguments concerning Juror 11's alleged bias, we omit discussion of Juror 14 and affirm the Court of Appeals on that issue. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (explaining appellate courts are under no obligation to review unclear or undeveloped arguments).

preserve his objection to the juror and that the district court did not commit fundamental error by allowing the juror to participate in the trial. *State v. Romero*, A-1-CA-38757, mem. op. ¶¶ 1, 4, 14 (N.M. Ct. App. Oct. 15, 2021) (nonprecedential).

{5} We agree with the Court of Appeals' conclusion that "the statements at issue did not establish bias," and that nothing Juror 11 said expressed prejudgment of Defendant's guilt or a failure to obey the district court's instruction to arrive at a verdict according to the evidence and the law. *Id.* ¶¶ 10, 12, 14. Therefore, Defendant failed to show a violation of his Sixth Amendment right to an impartial jury. *Id.*

## II. DISCUSSION

### A. Standard of Review

{6} Fundamental error analysis is appropriate because Defendant's claim was not preserved. Rule 12-321(B)(2)(c) NMRA; *see State v. Rojo*, 1999-NMSC-001, ¶ 55, 126 N.M. 438, 971 P.2d 829 ("Failure to make a timely objection to alleged improper argument bars review on appeal, unless the impropriety constitutes fundamental error . . . [which] arises when [there is] misconduct that compromises the

defendant's right to a fair trial." (internal quotation marks and citation omitted)).[2] Fundamental error analysis involves two basic steps. First, we determine "whether error occurred." *State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448. If an error has occurred, "we proceed to the second step, asking whether the error is fundamental." *Id.* ¶ 8. In order to show fundamental error, Defendant must "demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). Our analysis begins with an explanation of the categories of bias that may present during jury selection and the role of voir dire to protect a defendant's constitutional guarantee to an impartial jury.

---

[2]We correct a small but not insignificant misstatement of the standard of review by the Court of Appeals in this case. In its memorandum opinion, the Court of Appeals concluded by stating, "[i]n sum, we cannot say the facts of this case demonstrate 'exceptional circumstances' when guilt is so doubtful that it would 'shock the conscience to allow the conviction to stand.'" *Romero*, A-1-CA-38757, mem. op. ¶ 14 (quoting *State v. Aguilar*, 1994-NMSC-046, ¶ 21, 117 N.M. 501, 873 P.2d 247). The question under review here takes no account of the evidence or doubtfulness of guilt. But in circumstances of alleged and actual juror bias where there is uncertainty as to whether that bias was or was not the basis of the conviction, substantial justice is our guide. *See State v. Buhr*, 1971-NMCA-017, ¶ 8, 82 N.M. 371, 482 P.2d 74.

**B.      Types of Juror Bias**

{7}      The Sixth Amendment to the United States Constitution requires, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." An impartial jury is one that "does not favor one side more than another, treats all alike, [and] is unbiased, equitable, fair and just." *State v. McFall*, 1960-NMSC-084, ¶ 6, 67 N.M. 260, 354 P.2d 547. We presume "that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Lockhart v. McCree*, 476 U.S. 162, 184 (1986); *see also State v. Gardner*, 2003-NMCA-107, ¶ 12, 134 N.M. 294, 76 P.3d 47 (recognizing the presumption that the jury obeys its instructions).

{8}      Questions of juror bias are not easily answered because "[i]mpartiality is not a technical conception. It is a state of mind. . . . [T]he Constitution lays down no particular test[] and procedure is not chained to any ancient and artificial formula." *United States v. Wood*, 299 U.S. 123, 145-46 (1936). In an effort to clarify questions of juror bias, we explain the two types of juror bias that might arise during jury selection: actual bias, which requires factual development, and implied bias, a bias

6

conclusively presumed as a matter of law. If potential bias presents itself during jury selection, voir dire and juror strikes become critical to ensuring an unbiased jury.

**1.    Actual bias**

{9}    "Actual bias is bias in fact," or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (internal quotation marks omitted). Actual bias can only be uncovered when "a prospective juror is adequately questioned on voir dire with respect to his or her ability to apply the law impartially." *Id.* at 44. In order to prove actual bias, the opponent of the juror must establish that the bias would actually affect the juror's vote. *United States v. Brazelton*, 557 F.3d 750, 754 (7th Cir. 2009).

{10}    Actual bias is elicited by an unequivocal statement by the potential juror that he or she cannot be fair and impartial. *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968) ("[Actual] bias is based upon express proof, e.g., by a voir dire admission by the prospective juror of a state of mind prejudicial to a party's interest."). This actual, express bias, which is an unusual occurrence, requires juror disqualification.

{11}    Actual bias also "may be inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge

discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." *Torres*, 128 F.3d at 47, 48 (concluding that where the juror spoke during voir dire about her involvement with similar conduct as was charged, "the mental gymnastics required for her to separate her own experience . . . from the . . . testimony . . . brought out at trial would have been too precarious and too strenuous to have been expected of any juror" (internal quotation marks omitted)).

> Just as the trial court's finding of actual bias must derive from voir dire questioning, so the court is allowed to dismiss a juror on the ground of inferable bias only after having received responses from the juror that permit an inference that the juror in question would not be able to decide the matter objectively.

*Id.* at 47.

**2.    Implied bias**

{12}    Implied bias is the second type of bias, and it is "attributable in law to the prospective juror regardless of actual partiality." *Wood*, 299 U.S. at 134. This type of bias requires a court to excuse a juror "if the juror is related to one of the principals in the case." *Brazelton*, 557 F.3d at 753. Though an impliedly biased juror "may well be objective in fact, . . . the relationship is so close that the law errs on the side of caution" and requires excusal of the juror. *Id.*

{13}    This Court discussed implied bias in *State v. Sanchez*, 1995-NMSC-053, ¶ 14, 120 N.M. 247, 901 P.2d 178 (describing implied bias as an instance "where the juror

8

has a close relationship with a party or the attorneys trying the case" (citing *Randolph v. Commonwealth*, 716 S.W.2d 253, 255 (Ky. 1986) (concluding that a juror who was an employee of the state's attorney was impliedly biased))). In *Sanchez*, a juror revealed on a questionnaire and during voir dire that her sister was an employee of the district attorney's office. 1995-NMSC-053, ¶ 3. No attorneys asked any further questions relating to the juror's relationship with the district attorney's office, and it was not until jury deliberations were underway that defense counsel learned that the juror's sister was a victims' advocate who sat with the victim's family during trial. *Id.* ¶¶ 3, 8. This Court concluded that the juror's connection to the district attorney's office was "indirect and insufficient as a matter of law to support a determination of implied bias." *Id.* ¶ 15.

{14}    *Sanchez* provides instructive examples of implied bias from other jurisdictions. *Id.* ¶¶ 13-14. *See, e.g.*, *Haak v. State*, 417 N.E.2d 321, 325-26 (Ind. 1981) (concluding that a juror was impliedly biased where her husband accepted employment as a prosecutor); *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring) (identifying instances of impliedly biased jurors: "the juror is an actual employee of the prosecuting agency," "the juror is a close relative of one the participants in the trial," or "the juror was a witness or somehow involved in the [case]"). Implied bias is the easiest type of bias to manage because it is itself

disqualifying, even if a juror assures the court that he or she can remain impartial. *See Brazelton*, 557 F.3d at 753. To show implied bias, a defendant need not demonstrate or establish that the relationship actually affected the juror's judgment; the effect is "attributable in law to the prospective juror regardless of actual partiality." *Wood,* 299 U.S. at 134.

**3.     The role of voir dire to show disqualifying bias**

{15}     When a potential juror makes a statement during voir dire that calls into question whether he or she can be fair and impartial, the defendant's right to the opportunity to prove actual or implied bias attaches. *See Dennis*, 339 U.S. at 171-72 ("Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury."). A goal of voir dire is to uncover and investigate potential bias, and it is the mechanism for parties to clarify whether a juror's potential bias rises to the level of actual or implied bias, which would warrant excusal of the juror. *Sutherlin v. Fenenga*, 1991-NMCA-011, ¶ 36, 111 N.M. 767, 810 P.2d 353 ("The purpose of voir dire is to enable the parties to determine whether there is any bias or prejudice on the part of prospective jurors and to enable counsel to intelligently exercise challenges."). Though bias is often difficult to address, courts allow for "considerable latitude" in questioning potential jury members to uncover whether they have possible biases. *Id.* ¶ 45 (internal quotation marks and citation omitted).

10

With this framework in mind, we turn now to the statements made by Juror 11 and Defendant's actions in relation to those statements.

**C.      Juror 11's Statements**

**1.      Actual bias (express or inferred)**

{16}    Defendant argues that his Sixth Amendment right to an impartial jury was violated by Juror 11's unequivocal statement that he was biased against Defendant because of his relationship with Commander Sandoval. The State responds that Juror 11's statements were vague and equivocal, and that they "did not equate to an admission that the juror's knowledge of [C]ommander Sandoval would sway him in favor of convicting . . . Defendant." While acknowledging that Juror 11 indicated it would be difficult to face Commander Sandoval if he voted to acquit, the State characterizes Juror 11's statement as a "reference to the hypothetical state of his future relationship with Commander Sandoval *after* trial," which does not show prejudice.

{17}    To analyze whether Juror 11 elicited actual bias, we turn again to this Court's opinion in *Sanchez*. There, the defendants argued that the district court denied them an unbiased jury by allowing the sister of an employee of the district attorney's office to sit on the jury. *Sanchez*, 1995-NMSC-053, ¶¶ 1, 9. The Court concluded that the defendants had not revealed that the juror was actually biased, noting that the district

court specifically asked the juror whether she could be fair and impartial after learning of her relationship, and that the defendants "presented no other evidence that the juror was unable to perform her duties and that [the defendants] were prejudiced as a result." *Id.* ¶ 16. For that reason, the *Sanchez* Court concluded that the defendants had not revealed that the juror was actually biased. *Id.*

{18} Here, Juror 11 stated at least five different times during voir dire that he was willing and able to serve fairly and impartially. The statement he made during voir dire about his association with the State's witness did not constitute actual, express bias. Further questioning would have been necessary in order for the statements to rise to the level of actual bias. However, Defendant chose not to avail himself of that opportunity. *See, e.g.*, *Wood*, 299 U.S. at 133-34 ("All the resources of appropriate judicial inquiry remain available in this instance as in others to ascertain whether a prospective juror, although not exempted from service, has any bias in fact which would prevent his serving as an impartial juror.").

{19} We also do not infer actual bias from Juror 11's statements. It is certainly plausible that Juror 11 could separate his personal relationship with Commander Sandoval from his evaluation of the evidence she presented. That Juror 11 would be so intimidated by his relationship that he would not act on "the sense of responsibility and the individual integrity by which [citizens] judge [citizens]" is the

12

type of "[v]ague conjecture" described in *Dennis* in which we refuse to engage to disrupt a jury verdict. 339 U.S. at 172. The record in this case discloses at most potential bias that, absent further proof, does not rise to a constitutional violation. Actual bias must be grounded in facts developed at voir dire, and as we have discussed, no such factual development took place in this case. *See Torres*, 128 F.3d at 47.

**2.  Implied bias**

{20}    We reiterate the rule announced in *Sanchez* that "juror bias may be implied as a matter of law in New Mexico." 1995-NMSC-053, ¶ 14. However, like *Sanchez*, the facts of this case do not justify the implication. Juror 11 had an indirect relationship with the prosecution through Commander Sandoval. The fact that Juror 11 worked with Commander Sandoval in her capacity as the head softball coach at a school does not show a relationship sufficient in itself to be categorized as an "'extreme situation[] that would justify a finding of implied bias.'" *Id.* ¶ 15 (quoting *Smith*, 455 U.S. at 222 (O'Connor, J., concurring)). *But see, e.g.*, *Randolph*, 716 S.W.2d at 255-56 (concluding that a juror who was an employee of the state's attorney was impliedly biased); *Haak*, 417 N.E.2d at 325-26 (concluding that a juror was impliedly biased where her husband accepted employment as a prosecutor). The

record in this case reveals at most a social relationship, which may not be unusual or even avoidable given the small size of the community.

{21} Therefore, the district court did not err by allowing the juror to sit on the jury. Because we have determined the district court did not err, we do not reach the issue of whether the error was fundamental. *See Ocon*, 2021-NMCA-032, ¶ 8 ("If we conclude that the instructions were erroneous, we proceed to the second step, asking whether the error is fundamental.").

**3.      Preservation and waiver of juror bias objections**

{22} Under Rule 12-321(A), "[t]o preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked." Preservation serves three primary purposes: (1) it allows the district court an opportunity to cure claimed errors; (2) it allows the opposing party to respond to the claim of error and show the district court why it should rule against that claim; and (3) it creates a record which the appellate court may review to make an informed decision. *State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342. As stated above in setting forth the standard of review, we agree with the Court of Appeals that Defendant did not preserve the issue

because he failed to object and therefore precluded a district court decision for this Court to review.[3]

{23} The facts of this case also require discussion of waiver. We reiterate our concerns from *Sanchez* about the consequences of a holding that objections to actual juror bias are not waivable. 1995-NMSC-053, ¶ 12. In *Sanchez*, defense counsel did not ask the juror about her answers to the questionnaire or about her relationship with the district attorneys. *Id*. ¶ 3. In addition, defense counsel did not move to strike her for cause, and they did not exercise a peremptory strike on her. *Id.* After the jury began deliberating, the defendants raised concerns about the juror's relationship with the district attorneys through her sister. *Id.* ¶ 8. The district court, however, denied requests to interview the juror, to replace her with an alternate juror, or to declare a mistrial. *Id.* As we stated in *Sanchez*, if defendants, even after trial, were permitted to raise issues of juror bias, including bias that was known during voir dire when the juror could be dismissed, defendants would be "permitted to escape the consequences of . . . earlier knowledge [of possible juror bias] or to reverse [their] previous position simply because [they] gambled and lost." *Id.* ¶12 (first alteration in original) (internal quotation marks and citation omitted); *see also Gardner*, 2003-

---

[3]We add a note of caution to litigants that when confronted with concerns about juror bias during jury selection, issues of both preservation and waiver arise.

NMCA-107, ¶ 13 ("Because [the defendant] declined the additional [voir dire] offered at trial, he cannot now obtain relief in the form of a new trial.").

{24} Similarly, the Tenth Circuit held that "[w]hen the basis for a challenge to a particular juror can be timely shown, the failure to object at the trial's inception constitutes a waiver of the right to attack the composition of the jury." *United States v. Diaz-Albertini*, 772 F.2d 654, 657 (10th Cir. 1985) (concluding the defendant waived his objection to a juror where defense counsel was on notice prior to the impaneling of the jury that the potential juror had a relationship with the state police); *see also Brazelton*, 557 F.3d at 755 ("[T]he Sixth Amendment right to an impartial jury, like any constitutional right, may be waived. [The defendant's] on-the-record decision to pass up not one, but two opportunities to ask that Juror Number Four be struck for cause was a waiver." (internal quotation marks and citation omitted)). A "litigant cannot transform a tactical decision to withhold the information from the court's attention into a trump card to be played only if it becomes expedient." *Diaz-Albertini*, 772 F.2d at 657.

{25} It is undisputed that Juror 11 revealed the nature of his relationship with Commander Sandoval during voir dire and that defense counsel failed to inquire further into the matter or use available strikes. Defendant therefore waived any objection to Juror 11's service on his jury when he learned of the potential bias, did

not inquire further into the potential bias, failed to object to the juror's service, chose not to strike the juror for cause, and affirmatively accepted the juror, leaving his three peremptory strikes on the table. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) ("*Voir dire* examination serves to protect [the right to an impartial trier of fact] by exposing possible biases, both known and unknown, on the part of potential jurors."). For this reason, we are confident in announcing that, at least at the stage of jury selection, "[a] sentient defendant, knowledgeable of a possible claim of juror bias, waives the claim if he elects not to raise it promptly." *United States v. Uribe*, 890 F.2d 554, 560 (1st Cir. 1989).

**D.      The District Court Had No Duty to Dismiss Juror 11 Sua Sponte**

{26}      We reject Defendant's suggestion that the district court had a duty to sua sponte dismiss Juror 11 based on the colloquy described during voir dire. When confronted with potential bias that the party does not show rises to the level of actual bias, the court has discretion to inquire to dismiss that juror. *See* Rule 5-606(C) NMRA ("The court . . . may excuse any prospective juror for good cause."); *see also State v. Trujillo*, 1982-NMSC-145, ¶ 5, 99 N.M. 251, 657 P.2d 107 ("[T]he district court has discretion in determining how voir dire should be conducted and reversal is available only where the discretion is abused."). However, there is no authority requiring intervention, as a claimed expression of potential bias does not itself

violate the Sixth Amendment. While the district court may excuse the juror or inquire further, we defer to its discretion concerning the operation of voir dire and conclude that the district court did not abuse its discretion in not inquiring further of or dismissing Juror 11 on its own initiative. *State v. Johnson*, 2010-NMSC-016, ¶ 34, 148 N.M. 50, 229 P.3d 523 ("We will reverse only if a clear abuse of discretion by the district court in the conduct of voir dire resulted in prejudice to defendant.").

**E.     We Decline to Apply or Revisit *State v. Pierce***

{27}     Finally, Defendant invites us to revisit this Court's split decision in *State v. Pierce* and adopt the dissenting opinion as controlling. 1990-NMSC-027, ¶¶ 50-65, 109 N.M. 596, 788 P.2d 352 (Montgomery, J., dissenting). We decline for a number of reasons. First, the procedural posture of *Pierce* is dissimilar to the case at hand. In *Pierce*, the parties did not discover that a juror made misrepresentations on voir dire until after the submission of the case to the jury. *Id.* ¶¶ 4-5. The Court considered whether the district court erred by denying the defendant's motion for a new trial. *Id.* ¶ 3. In this case, Defendant learned of the alleged bias during voir dire and did not take steps to either ask questions or strike that juror. Additionally, unlike *Pierce*, the record before us shows that Juror 11 was truthful in his responses to questions during voir dire. There are no accusations nor is there evidence of misrepresentations

18

or concealment of material facts by Juror 11.[4] The facts and procedural posture of the two cases are incongruent, and therefore *Pierce* does not apply here.

{28} Regardless, the dissent in *Pierce* would not support a finding in Defendant's favor. The *Pierce* dissent suggests that a misrepresented fact that comes to light during voir dire would allow "the system [to] have worked as it is intended to," because counsel or the court would have had the opportunity to explore the issue further. *Pierce*, 1990-NMSC-027, ¶ 54 (Montgomery, J., dissenting). The situation described in the dissent is exactly what happened in the instant case. Counsel had the opportunity to explore the subject more fully and, ultimately, defense counsel chose not to object to Juror 11, or even question him further. Given that *Pierce*'s factual and procedural posture depart from those of this case, and that *Pierce*'s dissent would not grant Defendant relief, we decline to revisit the precedential effect of *Pierce*.

**F. Ineffective Assistance of Counsel**

{29} This Court reviews claims of ineffective assistance of counsel de novo. *State v. Favela*, 2015-NMSC-005, ¶ 9, 343 P.3d 178. Defendant claims ineffective

---

[4]This opinion is not written for the circumstance where bias is concealed, either mistakenly or purposefully, by the juror only to be discovered later. That is a third type of bias, which we call concealed bias. *See, e.g.*, *McDonough Power Equip., Inc.*, 464 U.S. at 556.

assistance of counsel because his defense counsel failed to object to the seating of an actually biased juror and because Defendant "did not knowingly, intelligently, and voluntarily waive his constitutional right to an impartial jury." This Court said in *Sanchez*, "When reviewing a claim of ineffective assistance of counsel, we do not second-guess defense counsel's trial strategy and tactics. Further, an assertion of prejudice is not sufficient to demonstrate that a choice caused actual prejudice." 1995-NMSC-053, ¶ 20 (citation omitted). The Court in *Sanchez* further explained that nonuse of peremptory challenges may be a strategic decision. *Id.* ¶¶ 20, 21. Defendant acknowledged the high-profile posture of this case, recognizing that seven of twelve jurors stated during voir dire that they had been exposed to details of the case through pretrial publicity, six of twelve jurors knew the prosecutor before the trial, and at least two of the jurors stated that they knew Defendant before trial. Where so many potential jurors knew Defendant or the prosecution or had some other connection to the case, counsel had to make strategic decisions about which jurors with knowledge about the case to keep and which to strike. It is plausible that choosing not to exercise a peremptory strike on Juror 11 could have been strategic, and therefore, under the facts of this case, the failure to strike does not establish a prima facie case of ineffective assistance of counsel.

{30} Finally, this Court has expressed its preference that ineffective assistance of counsel claims "be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517 ("The record [on appeal] is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice."). Therefore, we conclude Defendant has not established a prima facie case of ineffective assistance of counsel.

## III. CONCLUSION

{31} We hold that where alleged juror bias does not rise to the level of actual bias, and a defendant learns of the bias during voir dire, chooses not to challenge the juror for cause, does not use available peremptory challenges on the juror, and in fact affirmatively accepts the juror, that defendant has waived the right to argue actual or implied bias on appeal. Accordingly, the district court did not fundamentally err in allowing Juror 11 to sit on Defendant's jury. We decline to revisit the precedential effect of *Pierce* as it does not apply to this case. Finally, we hold that Defendant has not established a prima facie case of ineffective assistance of counsel. Therefore, we affirm the Court of Appeals.

{32} **IT IS SO ORDERED.**

21

_____

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**BRIANA H. ZAMORA, Justice**